Oliver P. Cleary [CSB#168440]
Attorney at Law
468 N. Camden Dr., Ste. 200
Beverly Hills, California 90210
Tel: (424) 324-8874

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.:18-cr-00172-GW |
| Plaintiff, | DEFENDANT'S SENTENCING POSITION |
| vs. | |
| JOSE MARTINEZ, | Date: 11/15/21<br>Time: 12:30 p.m. (webex)<br>Court: 9D |
| Defendant. | |

I.

The Person Before the Court

35-year old Jose MARTINEZ was born to a middle class family in Pomona, California. One of eight children produced through the union of his parents, Jose and Sandra Martinez-Hernandez. (PSR ¶ 108-109) The neighborhood Jose grew up in Pomona was safe and crime free. All the neighbors knew one another and as children, they often played outside or at the local park. (PSR ¶ 110) Despite this seemingly idyllic life, Jose MARTINEZ ended up a gang member.

Mr. MARTINEZ was 9-years old when he was jumped into Big-Hazard by three grown men using all fists for 13-seconds. MARTINEZ suffered black eyes, bruises on his back and head. In 1994, his brother, Roger, died the victim of a drive-by shooting while walking down the street with gang members. Jose's mother, Sandra Hernandez, a Spanish speaker, reacted by sending MARTINEZ to live in East L.A. To this day, she feels that he was gravely affected by the experience. That, in combination with being sent to CYA, had a deep impact on Jose. His mother believes he was never the same when he came out. (See Exhibit 2, *Letter of Jose & Sandra Martinez*)

## II.
### The Offense Conduct

There are several Hispanic street gangs around the City of Pomona, including the Pomona 12th Street gang, which controlled the south side of Pomona, and, the Cherryville gang, which controlled the north side of Pomona. The street gangs are controlled by members and associates of the Mexican Mafia and must pay "taxes" to them for permission to distribute drugs and maintain control over their territories. (PSR ¶ 36)

To generate income, the conspiracy taxed the distribution of controlled substances around the City of Pomona. (PSR ¶ 34) MARTINEZ' primary role within the conspiracy was to collect taxes from the sale of controlled substances. (PSR ¶ 37) As part of the drug trafficking conspiracy, Mr. MARTINEZ committed the following acts; (1) taxed drug dealers in the City of Pomona (2) possessed methamphetamine for distribution, and (3) possessed a firearm. (PSR ¶ 39-41)

## III.
### Objection to the PSR

Defendant respectfully objects to the PSR where a six-level enhancement is

added to Pseudo Count 1B, Extortion, by virtue of the fact that a firearm was "otherwise used." (PSR ¶ 63)  The PSR notes MARTINEZ's conduct did not amount to the discharge of a firearm but, was more than brandishing, displaying, or possessing a firearm or dangerous weapon. (PSR ¶ 63)  Yet, probation reasons that MARTINEZ possessed a firearm when he was collecting taxes, therefore, he "used" a firearm. (PSR ¶ 64)  Although MARTINEZ admitted he possessed the firearm for the purpose of protecting "himself, his drugs, and his drug proceeds" (PA p.12, f. iii-iv), it is mere speculation and conjecture that MARTINEZ used the firearm more than "brandishing, displaying, or possessing"[1] triggering a six level enhancement.

A November 1, 2000 amendment[2] defined "otherwise used" to mean "make the presence of the weapon known to another person, in order to intimidate that person."  Here, to otherwise use should mean MARTINEZ's possession of the firearm had the potential to arouse fear and dangerous reactions by police and security personnel.  See US v. Dixon, 982 F.2d 116 (3rd Cir. 1992), US v. Shores, 966 F.2d 1383 (11th Cir. 1992)

Where, as here, a firearm is secreted away, hidden under the seat or within a hidden compartment of a vehicle, concealed and not visible to onlookers.  That fails the definition of "otherwise used" to intimidate someone.  MARTINEZ admitted the firearm was for protection.  When the firearm is not being used to incite fear in a victim or arouse dangerous reactions by police, the "use" enhancement does not apply.  Here, defendant objects to the six-level enhancement applied under § 2B3.2(b)(3)(A)(ii).

---

[1] Application Note 1(J) states:
"Otherwise used" with reference to a dangerous weapon means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.
[2] The definition of "brandish" found in Application Note 1(c) of § 1B1.1. explained the definition of brandishing in this section of the guidelines is similar to the new statutory definition in 18 U.S.C. §924(c)(4).

## IV.
## MARTINEZ' Criminal History Overstated

Mr. MARTINEZ is a career offender even though the majority of his offenses involve controlled substances, not violent crimes. In the overall picture, Mr. MARTINEZ does not belong in criminal history category VI having never committed a violent offense. Rather, Mr. MARTINEZ is more properly placed in Criminal History Category V.

To be placed in Criminal History Category VI, one must have more than 13 criminal history points. To qualify as a career offender under §4B1.1, one must be 18 at the time of the instant offense, the instant offense must be either a crime of violence or a controlled substance offense, and, one must have two qualifying convictions of either a crime of violence or a controlled substance offense.

**Here**, MARTINEZ's total criminal history score is 20 placing him in Criminal History Category VI. (PSR ¶ 95-96) However, how he accumulated points shows that his score is truly overstated. For example, one three-point conviction occurred on August 4, 2013 and is the basis for Overt Acts 27 & 28 in the First Superseding Indictment (FSI). Mr. MARTINEZ pleaded guilty and spent four years in prison until he was discharged to PRCS in 2015. (PSR ¶ 92) He already paid for that offense.

Another three-point conviction dated June 18, 2015 forms the basis for Overt Act 55 in the FSI to which MARTINEZ pleaded guilty and spent three years in prison until he was discharged to PRCS in 2016. (PSR ¶ 93) He already paid for that offense.

Finally, MARTINEZ scores 5-points for a ten-year old felon in possession case where he pleaded guilty and was sentenced to three years in prison in 2011. Two points are added for being discharged on PRCS in 2013, so, he qualifies as

4

being under a criminal justice sentence at the time of the instant offense. (PSR ¶ 96)

**Here**, MARTINEZ also has two qualifying convictions making him a Career Offender. (PSR ¶ 97)  Of the two qualifying convictions, one from 2010, which also scores as a three-pointer (for purposes of determining his criminal history score) was for possessing 2.65 grams of methamphetamine where he pleaded guilty and was sent to prison for two years. (PSR ¶ 90) The other was from 2011, also scoring three-points, for possession of 8.15 grams of methamphetamine where he pleaded guilty and was again sent to prison for 3 years.  (PSR ¶ 91)  All in all, Mr. MARTINEZ served a total of 15 years and received a total of 14 criminal history points for these qualifying offense to which he is now going to be subject to a 248-month sentence.

V.

Martinez Should Not Be Treated as a Career Offender

There are times when the sentencing guidelines just get it plain wrong. A United States District Court Judge in Ohio conducted a survey of jurors to determine whether sentences under the advisory guidelines comported with community sentiment.[3] Judge Gwin's ultimate findings showed that jurors who actually sat through a person's trial recommended a sentence for that person that "was only 19% of the median Guidelines ranges and only 36% of the bottom of the Guidelines ranges."[4] This is a stunning variance between what the guidelines suggest as an appropriate sentence and what informed members of the community believe are appropriate sentences.

This showing applies even more so when it comes to USSG § 4B1.1 (A), the

---

[3] See Judge James S. Gwin, Juror Sentiment on Just Punishment: Do the Federal Sentencing Guidelines Reflect Community Values, 4 Harv. L. & Pol'y Rev. 173 (2010).
[4] Id. at 175.

career offender guideline. Sentences calculated under this guideline produce some of the harshest sentences while also producing some of the least likely to promote the purposes of sentencing.[5] According to United States Sentencing Commission, as opposed to violent offenders covered by USSG § 4B1.1, applying the draconian sentences recommended by the career offender guideline to repeat drug offenders, like MARTINEZ, does very little to advance the main goal of the career offender guideline—lower rates of crime through simple incapacitation.[6]

As the Commission put it: "Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else."[7] The career offender guideline thus makes the criminal history category a less perfect measure of recidivism risk than it would be without the inclusion of offenders qualifying only because of prior drug offenses.[8]

This is because the career offender guideline is the product of Congressionally mandated minimum mandatory sentences, mandatory sentences which are themselves based on political considerations and not the Sentencing Commission's expertise based on "empirical data and national experience."[9] For this reason, and as is the case with the drug guidelines in general, the career offender guideline is one from which this Court "may vary [] based solely on policy considerations, including disagreements with the Guidelines."[10]

Mr. MARTINEZ asks the Court to do the same in his case. As shown below, the sentencing range provided by the career offender guidelines, 188-235, plus the mandatory 60 month consecutive term of imprisonment, totaling a 248 month

---

[5] See United States Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform (Fifteen Years) at 133-34 (2004)
[6] Id. at 134.
[7] Id.
[8] Id.
[9] Kimbrough v. United States, 552 U.S. 85, 109 (2007).
[10] Id. at 101.

prison term is simply unreasonable under the circumstances of Mr. MARTINEZ's case.  Imposing such a sentence will not benefit Mr. MARTINEZ or the community.

VI.

The Career Offender Guidelines are Simply Advisory

The guidelines are, as the Court knows, simply advisory. The advisory nature of the guidelines encompasses the career offender guideline. As the Ninth Circuit recently noted:

> the career-offender Guideline, like all other Guidelines, are advisory and Guidelines with which a sentencing judge is empowered to disagree, when the circumstances in an individual case warrant.[11]

In light of United States v. Booker, 125 U.S. 738 (2005), the advisory sentencing guidelines are but one factor to be considered by the Court in fashioning a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a). The court should exercise its discretion here.  MARTINEZ's two prior drug convictions triggering the career offender guidelines to staggering effect of producing a wholly disproportionate sentence compared to the community's interest in punishing him. Yet, a court may vary downward whenever defendant's criminal history substantially overstates the seriousness of defendant's criminal record or the likelihood the defendant will commit other crimes. (U.S.S.G. § 4A1.3(a) and (b))

In United States v Sanchez, 517 F.3d 651, 655-58 (2nd Cir. 2008), the court granted a departure from criminal history category VI to criminal history category V for overstated criminal history where the record consisted of two prior felony

---

[11] United States v. Mitchell, 624 F.3d 1023, 1028 (9th Cir. 2011).

drug convictions, committed when the defendant was young. Here, Mr. MARTINEZ has struggled for a long time with substance misuse. The calculation of his criminal history, determination of his career offender status, and, inclusion in the conspiracy all rely on the same convictions which MARTINEZ was already punished for with lengthy prison terms. If not double counting, his criminal history category overstates the risk of recidivism and danger to the community.

## VII.
### The section 3553(a) factors pertinent to the Defendant's case

**(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;**

Here, early childhood trauma experienced by 8-year old Jose MARTINEZ when his older brother was killed in a drive-by shooting, and, being brutally jumped into the gang indelibly marked MARTINEZ, and, lacking the maturity and guidance necessary to protect himself form the traumas manifested itself through substance misuse throughout his twenties. Sending MARTINEZ to prison for 248 months neither reflects the purposes of sentencing nor the interests in the community as a whole.

(2)     **the need for the sentence imposed**– (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Mr. MARTINEZ's plea agreement calculated a base offense level of 24. (PSR ¶ 55, see Plea Agreement ¶ 23)  Without the effect of the Career Offender

guidelines, MARTINEZ's adjusted offense level is 26 after a two level increase for the multiple count adjustment.[12]  MARTINEZ is eligible and should be granted a the three-point adjustment for his acceptance of responsibility.[13]  In Criminal History Category V, MARTINEZ's Adjusted Offense Level of 23 and produces a guideline range of 84-105 months.  Then, the 60 month consecutive term produces a sentence of 144 months.

(3)  **the kinds of sentences available**; The Court has within its discretion to apply adjustments and departures to more justly reflect an appropriate sentence after consideration of all the relevant §3553(A) factors.

(4)  **the [guidelines] sentencing range** . . . ; The minimum term the court may impose is 5-years and the maximum term is life.  (PSR ¶ 129)

(5)  **any pertinent policy statement** issued by the Sentencing Commission . . . ; and

(6)  the need to avoid **unwarranted sentence disparities**.

Here, the one comparably placed defendant who has been sentenced to which the court could consider unwarranted sentencing disparity would be that of defendant Cheryl Perez-Casteneda who pleaded guilty to Counts 1 & 13 and was sentenced to 144-months imprisonment.  (PSR ¶ 19)

VIII.
<u>The Court Should Switch Off the Career Offender Guidelines</u>

Since *Booker*, the statutory language leans toward the retention of flexibility in sentencing, and Courts should exercise that flexibility and impose individualized sentences rather than allow restrictive policy statements contained in the Sentencing Guidelines ("not ordinarily relevant") to remove discretion. The flexibility to depart based on offender characteristics not only existed in the literal

---

[12] USSG § 3D1.4.
[13] USSG § 3E1.1 (a)-(b).

language of the original statutory directives and the Guidelines, but it also existed in the minds of the Commission members when they drafted the Guidelines. Such departures are now less restrictive in the capacity as variance factors associated with statutory provisions noted in 18 U.S.C.§ 3553 factors.

District courts have long had the power to depart "from the career offender provisions [even if] it reduced the sentence more than a modification of only the criminal history category would warrant." One way in which district courts may do so is to "'switch off' the career offender provisions."[14] This type of departure is permissible if a district court believes it necessary "to give proper weight to proportionality" in sentencing. The Court should do so here.

CONCLUSION

In light of the defendant's background, untreated drug addiction and the unfair application of the career offender guidelines, this case does not call for the 248-month custodial sentence that the government and Probation recommends. MARTINEZ has never had the opportunity to complete a drug rehabilitation program.  The court should take into account all the relevant § 3553(A) factors and impose a custodial sentence of 144-months, recommend the R-DAP program, and give MARTINEZ the opportunity to address his substance issues so that when he is released, Mr.  MARTINEZ will finally be able to achieve a drug-free productive life as a member of the community.


DATED:        11/10/21                    Respectfully submitted,
                                          /s/*Oliver P. Cleary*
                                          Attorney for Defendant
                                          Jose Martinez

---

[14] United States v. Reyes 8 F.3d 1379, 1389 (9th Cir. 1993).

EXHIBIT 1

To the honorable judge Woo,

I really am at a loss of words I mean what can I say to you that will make you see me as a different man. All I can do is tell you how I stand on things what I believe is real and what I want from myself. I lost my son to a fetynol overdose my 18 year old son his name is Anthony and I had to find this out here in jail. I use to think about my parents how I would feel if I lost them while I was doing time but never did I think I would lose my child. My oldest. I haven't even mourned the way I should I let down my children I let down myself and I was giving up. I couldn't be at his funeral and maybe this wouldn't of happened if I was there. I figured it was best I just stayed in here what more do I have anyway? Until I spoke with my wife and she told me to let go and let God and I didn't quite understand her until I finally ask God for help and I realized I can still do the things I've always wanted to do. It is okay to live a simple life with my wife and kids never have I wanted something as bad as I do now and that's wanting to live a good life. This is old this way of doing things this life is not what I want anymore and I will do what I have to and change it all not for anyone only myself I have to do it all for myself and I will. I want to go see my son where he is laid to rest and ask him to forgive me for not being here for not doing my job let him know I love him and that I will take care if his brother and sisters. I want to be a husband to my wife I know she needs me she's sick and I need to be home to help her. What I'm asking is for you to give me a chance to do the right thing to live the right life to be a man and not a boy. Your honor please give me that chance only one chance is all I'm asking and I know it's a lot to ask but I promise you won't be sorry. No matter what is said about me here today there is not a person who can really know who I am by

paper yes I know there's a lot of paper but it only takes this one time just one to prove everyone here wrong about me but the truth is it doesn't matter what anybody here thinks about me it's what I think about me what God thinks about me and I know that no matter what I got this for the first time ever in my life I got this and Your Honor whatever you decide here today I will take with a grain of salt I will do what it is that is required of me but also if you feel you want to take a chance if you believe in God and that he can do miracles than do me one and I won't let you down I won't let myself down I won't let God down I can guarantee that I can do it I'm so positive that I put whatever it takes to prove I can do it.

I would like to thank you for giving me this opportunity to write this letter that you are taking time to listen to I thank my lawyer for doing all he can to help me through this time I thank my wife for being by my side and I promise I will be by hers. I want to thank my son for teaching me what it is I need to do and want to do and that I love him and I miss him and I'll make it up to him somehow he's my guardian angel he's leading me the way home.

Sincerely,

Jose Martinez

EXHIBIT 2

Su honor,

mi nombre es Sandra Martínez y mi esposo es José Martínez y estoy escribiendo esta carta en nombre de mi hijo José Antonio Martínez. Quería hablar sobre el hecho de que mi hijo no siempre fue así, creo que de alguna manera tuve mucho que ver conmigo y con su padre.

En 1992, mi hijo Roger recibió un disparo en una pandilla y tenía tanto miedo de que mi otro hijo José estuviera involucrado o se involucrara de alguna manera que nos mudamos varias veces de un lugar a otro, fuimos de Pomona a Los Ángeles y El Monte todo el camino de regreso a Pomona y para cuando volvimos a Pomona, mi hijo ya estaba involucrado, ya estaba pasando el rato en las calles, ya estaba de fiesta y haciendo cosas que nunca deberían haber sucedido, pero sucedió porque trato de mantenerlo alejado de que terminamos en los peores vecindarios, supongo que simplemente no puedes alejarte de nada por aquí, solo tiene que esperar y rezar por lo mejor, creo que si lo hubiera hecho Diferentes, tal vez las cosas habrían sido diferentes para él. Sé que no puedo culparme a mí y a mi esposo por estas cosas. Sé que cuando creció, aprendió la diferencia entre lo que estaba bien y lo que estaba mal, pero supongo que también era un poco demasiado tarde, fue tan triste ver a un chico tan bueno convertirse en esto porque admirando y quería ser como su hermano mayor Hijo José, para saber de qué se trataban las calles, no sabía que lo tenía de fiesta y haciendo cosas que no debería haber hecho, creo que las cosas habrían sido diferentes para José si no hubiera confiado en él a mi hijo mayor y no nos hubiéramos movido tanto para tratar de evitarlo de él que tal vez hubiera sido diferente. Quiero que sepas tu honor de que es un buen hombre. Él tiene un hermoso gran corazón y lo amamos, lo extrañamos que queremos que Lo regrese a casa y al menos esté con nosotros, no nos estamos volviendo más jóvenes y quién sabe cuánto tiempo Dios nos tiene en esta tierra, pero quiero poder abrazar a mi hijo y sé que ahora las cosas son diferentes para él, ve las cosas de manera tan diferente que sabe que Dios es el camino y tiene una familia que tiene que cuidar de tu honor. Te ruego como madre que te pido que por favor le des una oportunidad, te estoy pidiendo esto en nombre de mi esposo y de mí, sé que tienes que hacer lo que es necesario Y respetaré tu decisión Todo lo que te pido es que le des una oportunidad y sé que puede hacerlo

Hazlo, su padre y yo no nos estamos volviendo más jóvenes y un día estaremos con Dios, pero nos gustaría ser parte de su vida, la nueva vida que sé que tendrá incluso por un tiempo.

Gracias por escuchar y tomarse su tiempo para escuchar lo que tenemos que decir en nombre de nuestro hijo. Dios te bendiga

Atentamente,

José y Sandra Martínez

Your Honor Judge Woo,

Your honor, my name is Sandra Martinez and my husband is Jose Martinez and I am writing this letter on behalf of my son Jose Antonio Martinez. I wanted to speak on the fact that my son was not always like this. I think in some way I had a lot to do with it, me and his father.

Back in 1992 my son Rogers was shot in a gang shooting and I was so scared that my other son Jose would be involved or become involved somehow that we moved several times from place to place we went from Pomona to Los Angeles to El Monte all the way back to Pomona and by the time we been back to Pomona my son was already involved he was already hanging out in the streets he was already partying and doing things that should never of happened but it happened because I try to keep him away that we ended up in worst neighborhoods I guess you just can't get away from anything around here you just have to hope and pray for the best I believe that if I would've did it different maybe things would've been different for him I know that I cannot all blame me and my husband for these things I know that when Jose got older learned the difference between what was right and what was wrong but I guess it was also a little too late it was so sad to see such a good boy turn into this because he was admiring and wanted to be like his older brother

I never condoned what my oldest son did and I was so upset when I learned that my oldest took my youngest son Jose to learn what the streets were about I did not know he had him partying and doing things that he should not of done I believe things would've been different for Jose if I would've not trusted my oldest son with him and we didn't move so much to try to keep it from him that maybe he would of been different. I want you to know that he is a good man. He has a beautiful big heart and we love him we miss him we want Jose to come home and be with us we're not getting any younger and who knows how long God has us on this earth but I want to be able to hold my son and I know that now things are different for him he sees things so differently he knows that God is the way and he has a family that he has to take care of your honor I beg of you as a parent that I ask you to please I ask you to please give him a chance I'm asking you this on behalf of my husband and myself I know you have to do what it is necessary All I ask of you is to give him a chance and I know that he can do it his father and I are not getting any younger and one day we will be with God but we would like to be a part of his life the new life I know he will have even for a little while.

Thank you for listening and taking your time to hear what we have to say on behalf of our son God bless you

EXHIBIT 3

Italia Martinez
2855 Foothill Blvd
La Vern, CA 91766

Date: 30/10/2021

To The Honorable Judge Wu:

I'm writing this letter regarding my brother, Jose Antonio Martinez. I just want to say that he is a kind, loving, and respectful person regardless of the life style he has lived. Jose Antonio Martinez is not just my brother, but, he is also a father to four beautiful kids. Just last year, your honor, his oldest son, Anthony Martinez, passed away, and Jose wasn't able to say his final goodbye. He now has three kids that are waiting to see when their Dad is coming home.

Jose Antonio Martinez would do anything to be with his children, your honor, but, besides Jose being a father he is also a son. I understand that the life style he lived has brought consequences but its never too late to change. I know Jose can change his life around. He won't be the first nor the last to make those changes. His background may speak differently, but this is why I ask your Honor to give my brother Jose a chance to restart his life, and for him to live a normal one, and for the time he has been locked up. I know for a fact he has done a lot of thinking and, Jose understands that the lifestyle he lived has not brought him anything good. Jose wants to do better for himself and for his family.

When my brother Jose use to live with me, this was back in 2016, he would help me around the house, help me with my little girl. He would take her to Doctors appointments and Jose would babysit her, and now my daughter who Jose help me with is now six years old. He was always trying to see what he can do to help me, my husband, Freddy Torres , my little girl, Catalina Torres and my little boy , Rogelio Torres , who is three years old which my brother Jose hasn't met.

Jose is the type of person that if he sees anyone needing help he would be quickly to lend a hand, or take care of them as if they were family, so besides the background he carries, my brother has a big heart in helping others especially his family. That is why I ask your honor to give Jose a chance to be reunited with his family. I hope, your honor, you can have the same faith I do for Jose to help him be home with his whole family, and not go based on his poor decision he made in the past. I will leave my faith in your hands.


Italia Martinez

EXHIBIT 4

To The Honorable Judge Wu

I'm writing this letter on behalf of my brother Jose A Martinez. I've known this person my whole life he is my brother. Please give my brother Jose an opportunity to show you and society that he can change and make a difference and be productive in life and care for his children's. Jose is a brother, father and a son to a united loving family. Furthermore, Jose cares and worries about his youngest children as he recently lost his eldest Son Anthony. Please consider my brother getting released early. Thank you.
Sincerely,

Kenia Martinez

This document was e-filed via CM/ECF and the following parties were registered to receive such filings and were served in accordance with the policies and procedures of the CM/ECF e-filing system;

1) Shawn.nelson@usdoj.gov,
2) Keith.ellison2@usdoj.gov,
3) Gregg.marmaro@usdoj.gov

DATED:      11/10/21                          *s/Oliver P. Cleary*
                                             Attorney for Defendant,
                                             Jose Martinez