TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
MATTHEW J. TAKO (Cal. Bar No. 307013)
Assistant United States Attorney
Transnational Organized Crime Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0705
    Facsimile: (213) 894-0142
    E-mail:   matthew.tako@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>CHERYL PEREZ-CASTANEDA,<br><br>    Defendant. | No. CR 18-172-GW-2<br><br>OPPOSITION TO DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Dkt. 1855)<br><br>Hearing Date: TBD<br>Hearing Time: TBD<br>Location:   Courtroom of the<br>          Hon. George H. Wu |

    Plaintiff United States of America, by and through its counsel of record, the Deputy Attorney General, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Matthew J. Tako, hereby files its Opposition to Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Dkt. 1855) (the "Opposition").

    This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 20, 2026          Respectfully submitted,

                                  TODD BLANCHE
                                  Deputy Attorney General
                                  BILAL A. ESSAYLI
                                  First Assistant United States
                                  Attorney

                                  ALEXANDER B. SCHWAB
                                  Assistant United States Attorney
                                  Acting Chief, Criminal Division


                                  _____/s/_____
                                  MATTHEW J. TAKO
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES..............................................iii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   BACKGROUND..................................................1

      A.   Offense Conduct........................................1

      B.   Defendant's Sentence...................................4

      C.   Incarceration and Health...............................5

      D.   Defendant's Prior Request for Relief...................6

      E.   Defendant's Exhaustion of Administrative Remedies......6

III.  LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE...................6

IV.   ARGUMENT....................................................8

      A.   Defendant Has Not Demonstrated An Extraordinary And
           Compelling Reason To Allow Release.....................9

           1.   Defendant's Health Concerns Do Not Justify
                Compassionate Release.............................9

           2.   Defendant's Daughter's Health Issues Similarly Do
                Not Constitute "Extraordinary and Compelling
                Reasons".........................................12

           3.   Any Other Alleged Hardship Suffered by Family is
                Not a Basis For Release..........................13

           4.   Defendant's Alleged Trauma From Moving Facilities
                Is Not a Basis For Release.......................14

      B.   Even If Defendant Were Eligible, the 18 U.S.C. §
           3553(a) Factors Do Not Support A Shorter Sentence.....14

           1.   Defendant Committed a Serious Offense Warranting
                the Sentence the Court Imposed...................15

           2.   Defendant Remains a Danger to the Community, and
                Public Safety Counsels Against Early Release.....16

           3.   Defendant's Health Concerns Do Not Overcome the
                Factors that Weigh Against Release...............17

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

        4.    Defendant's Rehabilitation Does Not Constitute
              Release..............................................18

V.    CONCLUSION....................................................19

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                     PAGE

**Cases**

Dillon v. United States,
   560 U.S. 817 (2010) .......................................... 6, 8

Freeman v. United States,
   564 U.S. 522 (2011) ............................................ 6

Gall v. United States,
   552 U.S. 38 (2007) ............................................ 16

United States v. Allison,
   2024 WL 3012780 (E.D. Mich. June 14, 2024) ...................... 13

United States v. Alvarez-Caceres,
   2023 WL 5718017 (D. Nev. Sept. 5, 2023) ........................ 10

United States v. Applewhite,
   2020 WL 137452 (D. Or. Jan. 13, 2020) ...................... 18, 19

United States v. Aruda,
   993 F.3d 797 (9th Cir. 2021) .................................... 7

United States v. Babit,
   2024 WL 3398307 (D. Nev. July 9, 2024) ...................... 12, 13

United States v. Brewer,
   2024 WL 2115926 (D. Nev. May 10, 2024) ......................... 13

United States v. Bryant,
   (144 F.4th 1119 (9th Cir. 2025) ................................. 7

United States v. Castillo,
   2025 WL 1883541 (S.D. Cal. July 7, 2025) ...................... 14

United States v. Chambliss,
   948 F.3d 691 (5th Cir. 2020) .................................... 8

United States v. Chavez,
   2024 WL 24065 (S.D. Cal. Jan. 2, 2024) ....................... 7, 8

United States v. Cody,
   2020 WL 3402854 (C.D. Cal. June 16, 2020) ..................... 15

United States v. Echevarria,
   2021 WL 1374277 (C.D. Cal. Apr. 12, 2021) ..................... 18

1

**TABLE OF AUTHORITIES (CONTINUED)**

2

DESCRIPTION                                                                 PAGE

3

United States v. Gomez,

4
   2021 WL 3141506 (D. Or. July 26, 2021) ...........................10

5
United States v. Gonzalez,
   2024 WL 150269 (E.D. Cal. Jan. 12, 2024) ........................10

6

United States v. Gotti,

7
   433 F. Supp. 3d 613 (S.D.N.Y. 2020) ..............................17

8

United States v. Guest,

9
   2022 WL 2104492 (D. Md. June 9, 2022) ...........................12

United States v. Keller,

10
   2 F.4th 1278 (9th Cir. 2021) .....................................8

11

United States v. Mackety,

12
   854 F. App'x 36 (6th Cir. 2021) .................................18

13

United States v. Martinez,

   2023 WL 5353466 (E.D. Cal. Aug. 21, 2023) .......................14

14

United States v. Maxwell,

15
   2021 WL 310970 (C.D. Cal. Jan. 28, 2021) ........................17

16

United States v. Nielson,

17
   2021 WL 606675 (D. Idaho Feb. 12, 2021) .........................10

18

United States v. Osinger,

19
   753 F.3d 939 (9th Cir. 2014) ....................................16

United States v. Peterson-Siler,

20
   2020 WL 5106722 (W.D. Wash. Aug. 31, 2020) ......................11

21

United States v. Price,

22
   840 F. App'x 884 (7th Cir. 2021) ................................18

23

United States v. Rivera,

   2021 WL 6062828 (D.N.M. Dec. 22, 2021) ..........................12

24

United States v. Roberts,

25
   2021 WL 5744687 (D. Md. Dec. 1, 2021) ...........................12

26

United States v. Ruffin,

27
   978 F.3d 1000 (6th Cir. 2020) ....................................8

United States v. Salazar-Valenzuela,

28
   2022 WL 16635330 (D. Ariz. Nov. 2, 2022) ........................10

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Shults,
  2022 WL 2990716 (E.D. Cal. July 28, 2022) ........................ 10

United States v. Singh,
  2023 WL 6600858 (D. Nev. Oct. 6, 2023) ........................... 13

United States v. Sprague,
  135 F.3d 1301 (9th Cir. 1998) ..................................... 7

United States v. Taylor,
  2024 WL 3498646 (S.D.N.Y. July 22, 2024) ......................... 10

United States v. Thompson,
  984 F.3d 431 (5th Cir. 2021) ..................................... 18

United States v. Willis,
  541 F. Supp. 3d 1185 (D. Or. 2021) ............................... 10

Vasquez v. United States,
  2020 WL 8461770 (C.D. Cal. Dec. 9, 2020) ......................... 18

**Statutes**

18 U.S.C. § 924(c)(1)(A)(iii) ....................................... 4

18 U.S.C. § 1962(d) ................................................. 4

18 U.S.C. § 3142(g) ................................................. 8

18 U.S.C. § 3553(a) ............................................ passim

18 U.S.C. § 3582(c)(1)(A) ........................................ 1, 7

18 U.S.C. § 3582(c)(1)(A)(i) ........................................ 9

18 U.S.C. § 3582(c)(2) .............................................. 8

28 U.S.C. § 994(t) ................................................. 19

**Rules**

U.S.S.G. § 1B1.13 .............................................. passim

U.S.S.G. § 4C1.1 .................................................... 6

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3    Defendant is serving a below Guidelines-range sentence for

4    multiple convictions related to her role as a Mexican Mafia Señora,

5    including ordering an assault on an inmate and later "green lighting"

6    his murder.  She has been incarcerated just a few months shy of eight

7    years.  Defendant now brings a Motion For Sentence Reduction Under 18

8    U.S.C. § 3582(c)(1)(A) (Dkt. 1855 (the "Motion" or "Mot.") before

9    this Court, arguing that she should be released early due to: her

10   present medical condition; her daughter's medical condition; alleged

11   trauma from moving facilities; and that she is housed far from

12   family.  She also makes reference to "[e]xtraordinary and compelling

13   rehabilitation while incarcerated."  Each of the bases she advances

14   fall far short of the standards required for premature release.

15   The Motion fails to satisfy the criteria that must be satisfied

16   for compassionate release.  <u>First</u>, defendant has not met her burden

17   to establish an extraordinary and compelling reason for release as to

18   any of the grounds she advances.  <u>Second</u>, defendant also has not

19   established that the relevant 18 U.S.C. § 3553(a) factors weigh in

20   favor of release; rather, those factors support defendant's continued

21   incarceration.  Defendant's Motion should be denied.

22

**II.    BACKGROUND**

23

**A.    Offense Conduct[1]**

24   Beginning no later than February 8, 2012, and continuing through

25   at least July 2016, defendant was a "Señora" for the Michael Lerma

26

---

27    [1] Defendant's conduct and resulting sentence were previously
detailed by the government in its opposition to defendant's prior

28   sentence reduction motion.  (<u>See</u> Dkt. 1154.)  This Opposition
*(footnote cont'd on next page)*

cell of the Mexican Mafia (the "Enterprise"), a racketeering enterprise engaging in a variety of criminal activity.  (Second Revised Presentence Report, Dkt. 618 ("PSR"), ¶¶ 34, 38.)  Señoras are high-level facilitators within the Mexican Mafia, collecting extortionate taxes and drug proceeds, distributing those proceeds, and giving orders to others to act.  (Id. ¶¶ 46, 49-61.)

In total, the Enterprise engaged in, and attempted to engage in, multiple acts of violence -- kidnappings, extortion, carjackings, assaults, and murders -- to protect and expand its criminal activities while promoting fear amongst any rivals, witnesses, or potential law enforcement cooperators to not cross the Enterprise.  (Id. ¶¶ 34-36; Dkt. 597 ("Revised Plea Agreement") ¶ 16.b.)  The Enterprise also controlled the majority of drug distribution by Hispanic gangs in and around Pomona and within the Calipatria State Prison.  (Revised Plea Agreement ¶¶ 16.c-d.)  And as a Señora, defendant played a critical role in the Enterprise.  She coordinated directly with co-defendant Lerma to carry out these activities.  (Id. ¶ 16.g.)  She helped collect proceeds, including through extortion of Calipatria inmates and "taxes" on Pomona drug dealers, and then gave some of these funds to co-defendant Lerma.  (Id.)  She also directed that same taxation activity, ordered others to collect those taxes, and controlled and directed the extortion proceeds from inmates.  (Id. ¶ 16.h.)  These extortion and taxing activities were only possible due to the Enterprise's threats of violence.

In addition to these roles, however, defendant personally solicited the murder of an inmate as retaliation for shooting her son

incorporates that Statement of Facts.  A fulsome factual basis is also contained in the Revised Plea Agreement (Dkt. 597, ¶ 16), which is similarly incorporated by reference.

2

and engaged in a carjacking attempt which resulted in a victim being shot.  (PSR ¶¶ 62-71.)  Specifically, in July 2013, defendant used her role to find victim S.L., then an inmate at Los Angles County Jail, and ordered him stabbed.  (Revised Plea Agreement ¶ 16.h.xii.)  After S.L. was stabbed, defendant worked to have him assaulted again or killed and she obtained the approval of a Mexican Mafia member to have S.L. placed on the "green light" list, marking him for murder.  (Id.)

While defendant later obtained belated approval for green lighting S.L., she initially greenlit him herself.  In a conversation with co-defendant S. Gonzalez, defendant stated that she greenlit S.L. and simply wrote co-defendant Lerma to tell him about her order.  (See Dkt. 621 ("Gov't Sentencing Position"), Ex. 1 at p.3.)  Defendant was then told by co-defendant S. Gonzalez that her green lighting S.L. was the same as if co-defendant Lerma did it.  (See id.)  Later, co-defendant Lerma validated the order in a letter which was seized by prison staff.  (See id., Ex. 2 at p.2.)

That same month, defendant took part in an attempted carjacking in which she agreed that co-defendant J. Gonzalez would bring a semi-automatic pistol to use if needed.  (Revised Plea Agreement ¶ 16.h.xvi.)  Co-defendant J. Gonzalez ultimately shot one of the victims in the leg.  (PSR ¶¶ 68-69.)  In a call after the attempted carjacking, defendant recounted the events and laughed about the shooting.  (See Gov't Sentencing Position, Ex. 3.)  On that same call, co-defendant S. Gonzalez told defendant "think about the green light girl, the good ole times, you know, going by, drive by on another car."  (Id.)  Reminiscing about drive by shootings, both co-defendant S. Gonzalez and defendant then laughed.  (Id.)

3

**B.    Defendant's Sentence**

On October 26, 2020, pursuant to a plea agreement, defendant pled guilty to Counts One and Thirteen of the indictment -- racketeering conspiracy (18 U.S.C. § 1962(d)) and using, carrying, and discharging a firearm in relation to a crime of violence (18 U.S.C. § 924(c)(1)(A)(iii)).  (Dkt. 605.)[2]

The United States Probation Office ("USPO") filed the PSR on December 21, 2020.[3]  The PSR calculated a total offense level of 33, a criminal history category of I, and a Sentencing Guidelines range of 135 to 168 months' imprisonment as to Count One (racketeering) and an additional 120-month mandatory consecutive term of imprisonment as to Count Thirteen (discharge of a firearm).  (PSR p. 4, ¶¶ 161-63.)  Thus, the total advisory Guidelines sentence was 255 to 288 months' imprisonment.  The USPO recommended a total sentence of 255 months -- the 135-month low-end sentence for Count One and the 120-month mandatory consecutive sentence for Count Thirteen.  (Dkt. 617, USPO Revised Recommendation Letter.)

Defendant's plea agreement called for a government recommendation of a total of 180 months.  (Revised Plea Agreement ¶ 3.e.)  Accordingly, the government recommended 180 months' imprisonment (60 months as to Count One and 120 months as to Count Thirteen).  (Gov't Sentencing Position at 21.)  Defendant initially requested 121 months' imprisonment.  (Dkt. 611 at 18.) In a supplemental filing, defendant changed that recommendation to time served (a little over two and a half years) and a period of house

---

[2] Defendant initially had a change of plea hearing on July 9, 2020 (Dkt. 565) to the initial plea agreement (Dkt. 564).  The October 2020 hearing was to the Revised Plea Agreement and controls.

[3] As defined above, PSR refers to the Second Revised PSR.

4

arrest.  (Dkt. 620 at 9.)  This request was based on defendant's medical conditions, including asthma, diabetes, and a recent COVID-19 infection.  (Id. at 6.)

On January 4, 2021, this Court sentenced defendant to 144 months' imprisonment -- 24 months on Count One and 120 months, consecutive, on Count Thirteen.  (Dkt. 634.)

### C.    Incarceration and Health

Defendant is 63 years old and currently serving her sentence at FCI Victorville Medium I, a medium security BOP facility.  Defendant was previously at FCI Dublin.  Defendant's projected home detention eligibility date is February 12, 2028, and her projected release date with Good Conduct Time is August 12, 2028.  (Tako Decl. Ex. H at 2.) Including presentence jail credit, defendant has been incarcerated for over seven years and eight months -- approximately 64% of the sentence given by this Court.  (Id. at 4.)  Her security classification has fluctuated between low and minimum.  (Id. Ex. F.) She has no discipline records while in custody.  (Id. Ex. G.)

Defendant's Motion states she suffers from several health conditions, namely kidney stones, asthma, diabetes, high cholesterol, vitamin D deficiency, a pinched nerve in her back, neuropathy, and requires a knee replacement.  (See Mot. at 10.)  While defendant submitted no medical records in support of her Motion, these conditions are reflected[4] in her most recent medical records.  (Tako

---

[4] Asthma, Type 2 diabetes, prediabetes, neuropathy, calculus of kidney (kidney stones), hyperlipidemia (high cholesterol), vitamin D deficiency, and back pain with sciatica (as well as vertebrogenic lower back pain) are all directly referenced in defendant's most recent medical records.  (See Tako Decl. Ex. D.)  There are also references to a 2017 left knee replacement and multiple references to current pain in defendant's right knee.  (See id.)

Decl. Ex. D.)  Despite these issues, she is classified as Care Level 1 for mental health (BOP's lowest medical level) and Care Level 2 (stable, chronic care) for medical health.  (Tako Decl. Ex. E.) Medical records similarly reflect that routine doctor visits, tests, and medications are being administered.  (Id. Exs. A-D.)

### D. Defendant's Prior Request for Relief

In 2024, defendant filed a sentence reduction motion based on Amendment 821 to the Sentencing Guidelines as a zero-point offender. (Dkt. 1144.)  This motion was opposed by the government.  (Dkt. 1154.)  This Court denied that motion, finding that defendant was not eligible for a two-level reduction under U.S.S.G. § 4C1.1 and, even if she was, her original sentence fell below the minimum range of the amended Guidelines.  (Dkt. 1190.)

### E. Defendant's Exhaustion of Administrative Remedies

On July 31, 2024, defendant submitted an email request for compassionate release based on her medical needs not being met, trauma from her transfer after FCI Dublin closed, her daughter's medical conditions, and being housed far from family.  (Mot. Ex. 2.) Defendant indicated she received no response.  (Mot. at 3.)

## III. LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE

After a sentence is imposed, the "rule of finality" generally forbids its modification.  Freeman v. United States, 564 U.S. 522, 526 (2011) (plurality opinion); Dillon v. United States, 560 U.S. 817, 824-25 (2010).  Compassionate release is one of the "few narrow exceptions," Freeman, 564 U.S. at 526, allowing a court to "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed

the unserved portion of the original term of imprisonment," 18 U.S.C. § 3582(c)(1)(A).

Because this relief is drastic and permanent, courts are never obligated to award it. The defendant bears the burden of establishing the requirements for a sentence reduction by a preponderance of the evidence. See, e.g., United States v. Sprague, 135 F.3d 1301, 1306-07 (9th Cir. 1998)

First, the Court can adjudicate a request for compassionate release only after the defendant has met an administrative exhaustion requirement.

Second, in evaluating compassionate release requests, courts must determine whether a defendant has presented "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Id. Although U.S.S.G. § 1B1.13 is the policy statement that contains requirements for sentenced reductions under § 3582(c)(1)(A), for several years there was no applicable policy statement because of the First Step Act's changes in federal sentencing law that allowed defendants to bring motions as well as the Bureau of Prisons. United States v. Aruda, 993 F.3d 797, 801-02 (9th Cir. 2021) (superseded by statute).

Now, with the adoption of the 2023 U.S.S.G. Amendments, that has changed. The 2023 Amendments apply to motions by both defendants and the Bureau of Prisons. Accordingly, courts must follow the requirements in the current version of § 1B1.13. See United States v. Bryant, 144 F.4th 1119, 1124 (9th Cir. 2025) (discussing 2023 Amendments superseding Aruda) (cert. pending); see also United States

7

v. Chavez, 2024 WL 24065, at *3 (S.D. Cal. Jan. 2, 2024) (The "policy statements are binding on both types of motions"); Dillon v. United States, 560 U.S. 817, 821 (2010) (holding that under the materially identical provision in 18 U.S.C. § 3582(c)(2) regarding application of retroactive guideline amendments that the criteria stated by the Sentencing Commission are binding).

Third, courts must determine that the defendant is not a danger to safety of any other person or the community, as provided in 18 U.S.C. § 3142(g).  U.S.S.G. § 1B1.13(a)(2).

Fourth, even if the other requirements are met, courts must consider the § 3553(a) factors "to the extent that they are applicable."  18 U.S.C. § 3582(c)(2).  A court should deny a sentence reduction if the defendant does not establish that the balance of the applicable factors weigh in favor of release.  "This last [§ 3553(a)] requirement confirms an overarching point:  The district court has substantial discretion.  The statute says that the district court 'may' reduce a sentence if it finds the first two requirements met; it does not say that the district court must do so."  United States v. Ruffin, 978 F.3d 1000, 1005 (6th Cir. 2020); see also United States v. Keller, 2 F.4th 1278, 1284 (9th Cir. 2021) (district court did not abuse its discretion in denying compassionate release based on Section 3553(a) factors); United States v. Chambliss, 948 F.3d 691, 693-94 (5th Cir. 2020) (same, even where defendant was terminally ill).

## IV.  ARGUMENT

The Court should deny the Motion for two independent reasons. First, none of the proffered bases for release present an extraordinary and compelling reason for release.  Second, even if an

8

"extraordinary and compelling" reason existed, which none do, the Section 3553(a) factors -- which this Court considered in imposing the original sentence -- do not weigh in favor of release.

### A.    Defendant Has Not Demonstrated An Extraordinary And Compelling Reason To Allow Release

Defendant's Motion should be denied because it lacks "extraordinary and compelling reasons" as required by statute.  18 U.S.C. § 3582(c)(1)(A)(i).  Defendant advances multiples reasons for compassionate release: her current medical conditions, her daughter's medical condition, that she is housed far from family, and that she suffered trauma when she was transferred to a new facility.  None are sufficient.

#### 1.    Defendant's Health Concerns Do Not Justify Compassionate Release

Under the Guidelines, medical circumstances are extraordinary and compelling when a defendant: (1) suffers from a terminal illness; (2) suffers from a serious condition that "substantially diminishes the ability of the defendant to provide self-care . . . and from which he or she is not expected to recovery"; (3) "requires long-term or specialized medical care" that she is not receiving and "is at risk of serious deterioration in health or death" without such care; or (4) is at an increased risk due to "personal health risk factors" of suffering severe complications or death due to the risk of an ongoing infectious disease outbreak or public health emergency and "such risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1).

Arguments that chronic health issues are not being adequately treated in custody fail when "records indicate that [defendant] is

9

medically evaluated regularly and taking medication." United States v. Shults, 2022 WL 2990716, at *5 (E.D. Cal. July 28, 2022); see also United States v. Gonzalez, 2024 WL 150269, at *3 (E.D. Cal. Jan. 12, 2024) (collecting cases denying compassionate release when BOP medical records show regular health visits, conditions are being monitored, and conditions are treatable by BOP). Moreover, a court cannot credit claims that are not supported by a defendant's medical records. See United States v. Salazar-Valenzuela, 2022 WL 16635330, at *2 (D. Ariz. Nov. 2, 2022) (collecting cases). This assessment is case-specific and fact intensive.

Defendant claims (without providing medical records) that she suffers from kidney stones, asthma, diabetes, high cholesterol, vitamin D deficiency, a pinched nerve in her back, neuropathy, and requires a knee replacement. (Mot. at 10.) A copy of defendant's BOP medical records are attached to the government's accompanying declaration. (Tako Decl. Exs. A-D.) Courts across the country have found that defendant's specific medical conditions do not qualify for compassionate release. See, e.g., United States v. Taylor, 2024 WL 3498646, at *3 (S.D.N.Y. July 22, 2024) (denying compassionate release based on multiple conditions including asthma and anxiety); United States v. Alvarez-Caceres, 2023 WL 5718017, at *2-3 (D. Nev. Sept. 5, 2023) (denying compassionate release for asthma); United States v. Willis, 541 F. Supp. 3d 1185, 1189-91 (D. Or. 2021) (denying compassionate release based on neuropathy, high cholesterol, and chronic back pain); United States v. Gomez, 2021 WL 3141506, at *3 (D. Or. July 26, 2021) (compassionate release denied when, among other issues, defendant said he needed "dual knee surgeries"); United States v. Nielson, 2021 WL 606675, at *1-2 (D. Idaho Feb. 12, 2021)

(denying compassionate release based on vitamin D deficiency and high cholesterol); United States v. Peterson-Siler, 2020 WL 5106722, at *4-6 (W.D. Wash. Aug. 31, 2020) (denying compassionate release based on multiple conditions including kidney stones).  Accordingly, defendant's proffered medical bases for release are not extraordinary and compelling.

Here, defendant has not adequately stated that she suffers from serious health conditions requiring compassionate release.  She put forth no evidence that her medical conditions require long-term or specialized care that is not being provided.  To the contrary, defendant indicates that she is already being prescribed medication to address her various medical issues.  (See Mot. at 10.)  She further notes that she does not require durable medical equipment, does not require assistance with self-care, and does not require assisted living.  (See id. at 10-11.)  Looking at the Guidelines, she has cited no terminal illness, no diminishment of her ability to provide self-care, and no need for long-term or specialized care that she is not getting and now risks serious deterioration or death.  She has made no showing whatsoever of any basis detailed in the Guidelines.

Defendant's medical records instead show someone in the second lowest severity category for physical health and the lowest severity category for mental health who is receiving routine visits, tests, and medication.  Consequently, defendant's health concerns do not satisfy the criteria for extraordinary and compelling reasons for release.

2.  <u>Defendant's Daughter's Health Issues Similarly Do Not Constitute "Extraordinary and Compelling Reasons"</u>

Defendant's daughter having cervical cancer similarly is not sufficient to support release.  Defendant does not specify which daughter, but at the time of her PSR in 2020, one daughter was 32 years old and the other was 27.  (PSR ¶ 126.)  Sentencing Commission and BOP criteria can guide courts in determining whether "extraordinary and compelling reasons" exist.  <u>United States v. Roberts</u>, 2021 WL 5744687, at *1 (D. Md. Dec. 1, 2021); <u>see also</u>, <u>United States v. Rivera</u>, 2021 WL 6062828, at *2-3 (D.N.M. Dec. 22, 2021) (using BOP Program Statement § 5050.50 for guidance on compassionate release); <u>United States v. Guest</u>, 2022 WL 2104492, at *13 (D. Md. June 9, 2022) (denying a request for compassionate release because the caregiver was not "incapacitated within the meaning of BOP Program Statement § 5050.50").  The Sentencing Guidelines contemplate potential release based on the health of a defendant's adult child (or other immediate family member) if the child is "incapable of self-care because of a mental or physical disability or a medical condition."  U.S.S.G. § 1B1.13(b)(3)(A).

Incapacitation requires something much greater than simply having a serious medical condition.  Another court in this circuit analyzing a compassionate release request based on a similar parental care basis found that a parent being diabetic, which makes "daily tasks more difficult," does not render a parent "incapable of self-care" and does not create an extraordinary and compelling circumstance for relief.  <u>United States v. Babit</u>, 2024 WL 3398307, at *4-5 (D. Nev. July 9, 2024).  On the contrary, an immediate family member requiring "round-the-clock assistive and palliative care"

12

would qualify as incapacitated. United States v. Allison, 2024 WL 3012780, at *3 (E.D. Mich. June 14, 2024). And when a defendant's PSR notes additional family exists, the defendant must sufficiently explain why some other friend or relative cannot serve as a caretaker. See Babit, 2024 WL 3398307, at *4; see also United States v. Brewer, 2024 WL 2115926, at *3 (D. Nev. May 10, 2024) (denying compassionate release when defendant does not explain how he is only available caretaker).

Here, defendant provides no information whatsoever about her daughter's condition other than her present diagnosis. (Mot. Ex. 2.) There is no showing that her daughter is incapable of self-care. Nor is there any showing that, even if defendant's daughter is incapable of self-care, that there is no one else (i.e., another relative) capable of providing any necessary care. The PSR identifies multiple family members and the Motion notes that at least one daughter is married and resides with her husband. (Mot. at 9.) Accordingly, this does not qualify as the type of incapacitation which may permit compassionate release.

### 3. Any Other Alleged Hardship Suffered by Family is Not a Basis For Release

Defendant makes a vague reference to "continued hardships my family suffers due to my continued incarceration." (Mot. at 6.) This is later explained as in person visits being "nearly impossible" as defendant is housed over 1,850 miles from family. (Mot. Ex. 2.) Being housed far from family is not a valid basis for compassionate release. See United States v. Singh, 2023 WL 6600858, at *1-3 (D. Nev. Oct. 6, 2023) (denying motion based in part on defendant being "far away from his family" as "[t]he authority of where [defendant]

13

is placed . . . lies with the BOP" and a sentence reduction is not

the proper avenue for redress).  Defendant's Motion should similarly

be denied on this basis.

              4.   <u>Defendant's Alleged Trauma From Moving Facilities Is</u>

                  <u>Not a Basis For Release</u>

Finally, defendant argues for release based on trauma from a

rushed transfer to a new facility after Dublin FCI was closed.  (Mot.

Ex. 2.)  As noted above, placement issues lie with BOP and are not a

valid basis for sentence reduction.  And alleged trauma from

conditions in custody, absent something more, is not a valid basis

for release.  <u>Compare</u> <u>United States v. Martinez</u>, 2023 WL 5353466, at

*1 (E.D. Cal. Aug. 21, 2023) (denying compassionate release motion

based on trauma of witnessing abuse of other inmates at FCI Dublin),

<u>with</u> <u>United States v. Castillo</u>, 2025 WL 1883541, at *3 (S.D. Cal.

July 7, 2025) (granting compassionate release when inmate herself was

a victim of sexual abuse while in custody).  Here, the only alleged

trauma is from a rushed move to a new facility.  That is not enough.

Accordingly, the Motion should be denied on this basis as well.

      **B.**  **Even If Defendant Were Eligible, the 18 U.S.C. § 3553(a)**

          **Factors Do Not Support A Shorter Sentence**

Even if the Court concludes that defendant has met the

exhaustion requirement and established an extraordinary and

compelling reason for release, her Motion still should be denied

based on the 18 U.S.C. § 3553(a) factors.  Defendant makes reference

in her Motion to rehabilitation and her PATTERN score.  (Mot. at 3-

4.)  But all the § 3553(a) factors -- which this Court considered

when imposing defendant's sentence -- do not support her request for

14

premature, permanent release.  Rather, they support her original sentence

### 1.    Defendant Committed a Serious Offense Warranting the Sentence the Court Imposed

"[T]he nature and circumstances of the offense," and the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" all weigh against defendant's Motion for release.  18 U.S.C. §§ 3553(a)(1), (2)(A).  Even if a defendant is in deteriorating health, compassionate release motions can be and are denied if the § 3553 factors and seriousness of the underlying offense counsel against release.  See, e.g., United States v. Cody, 2020 WL 3402854, at *1-2 (C.D. Cal. June 16, 2020) (denying compassionate release motion for 72-year-old inmate suffering deteriorating health who had served nearly three decades in prison).

Defendant's present sentence is significantly below the Guidelines range found by the PSR.  The PSR determined that defendant's applicable Guidelines range was 255 months to 288 months. (PSR p. 4.)  A low-end sentence based on the PSR calculations would have been just over 21 years, a period which defendant has served just over one-third of so far.  The government recommended 180 months, pursuant to the plea agreement, a period which defendant has served just over half of.  And defendant has served less than two-thirds of her ultimate sentence -- 144 months.  Requiring defendant to complete her below Guideline-range sentence also furthers "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Indeed, that is the very purpose of the

15

Sentencing Guidelines; they exist to ensure national uniformity in sentencing, and "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." Gall v. United States, 552 U.S. 38, 54 (2007); see also United States v. Osinger, 753 F.3d 939, 949 (9th Cir. 2014) ("[W]e have trouble imagining why a sentence within the Guidelines range would create a disparity, since it represents the sentence that most similarly situated defendants are likely to receive.").

And, as detailed above, defendant's conduct was indeed a serious offense involving violence, narcotics, firearms, and victimizing multiple individuals. She held a key role in the Enterprise, helping collect and direct the flow of proceeds from the Enterprise's illicit activities. She ordered an assault on an inmate and then greenlit him to be murdered. She partook in a violent attempted carjacking, where a person was shot. Rather than show remorse or shock in the aftermath, she laughed about the shooting as well as previous drive-bys. Releasing defendant before the completion of her below Guideline-range sentence will create, not avoid, unwarranted disparities between similarly situated defendants.

> 2. Defendant Remains a Danger to the Community, and Public Safety Counsels Against Early Release

The need "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant" also counsel against early release here. 18 U.S.C. §§ 3553(a)(2)(B), (C). A defendant must demonstrate that she is "not a danger to the safety of any other person or to the community" in order to obtain compassionate release. U.S.S.G. § 1B1.13(a)(2). And this Court may not reduce a defendant's sentence absent such a finding. See, e.g.,

1   United States v. Gotti, 433 F. Supp. 3d 613, 619-20 (S.D.N.Y. 2020)

2   (release was inappropriate regardless of extraordinary and compelling

3   circumstances; defendant posed a continuing danger to the public).

4        The record here reflects that defendant poses a real and

5   continuing danger to the community.  The crimes for which she is

6   incarcerated, in particular her prominent role in the Enterprise and

7   its campaign of violence, are among the most dangerous that exist in

8   our society.  Her ability to green light a murder on her own accord -

9   - simply sending a letter to co-defendant Lerma about it and the

10  actions going ahead prior to any sign-off from co-defendant Lerma --

11  demonstrates the level of leadership, authority, and power she had

12  within the Enterprise.  It was up to defendant, and defendant alone,

13  to decide whether someone lived or died.  Defendant continues to pose

14  a real danger to the community.

15        3.   Defendant's Health Concerns Do Not Overcome the

16             Factors that Weigh Against Release

17        The Court may also consider the need to provide defendant with

18  effective medical care, see 18 U.S.C. § 3553(a)(2)(D), and defendant

19  has failed to establish that her facility is unable to manage her

20  conditions.  See Sec. IV.A.1., supra.  Defendant put forth no

21  evidence to this effect, and, in fact, the evidence supports the

22  exact opposite outcome.  Considering the low severity level of

23  defendant's current health conditions and her receipt of routine

24  medical care, defendant's health concerns do not support her request

25  for immediate and permanent release.

26        Indeed, chronic medical conditions do not warrant release so

27  long as they can be managed in prison.  See United States v. Maxwell,

28  2021 WL 310970, at *3 (C.D. Cal. Jan. 28, 2021) ("Chronic conditions

. . . that can be managed in prison are not a sufficient basis for compassionate release"); see also United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021) (affirming denial of compassionate release where the defendant's two "chronic medical conditions" were "well-controlled"); United States v. Price, 840 F. App'x 884, 885 (7th Cir. 2021) (affirming denial of release where district court found that inmate's health conditions were "well-managed" and therefore "did not warrant release").  Defendant has not produced evidence suggesting that her facility is unable to manage her medical needs, and this Court cannot assume defendant will be treated inadequately while in custody.  See United States v. Mackety, 854 F. App'x 36, 38 (6th Cir. 2021) (affirming denial of release where nothing in the record suggested that BOP was unable to manage inmate's particular medical needs); United States v. Echevarria, 2021 WL 1374277, at *1 (C.D. Cal. Apr. 12, 2021) (denying compassionate release where, inter alia, inmate "provide[d] no medical records to indicate how the conditions of which he complains are being managed while in prison"); Vasquez v. United States, 2020 WL 8461770, at *3 (C.D. Cal. Dec. 9, 2020) (denying compassionate release where, inter alia, inmate failed to "demonstrate[] that his health conditions cannot be managed while still incarcerated").

4.  Defendant's Rehabilitation Does Not Constitute Release

Compassionate release is not warranted merely because an inmate is aging and has behaved in prison.  "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for purposes of compassionate release, 28 U.S.C. § 994(t), and even performance as a "model inmate" cannot justify an "abrupt departure from [a defendant's] current sentence," United States v. Applewhite,

2020 WL 137452, at *2 (D. Or. Jan. 13, 2020).  While defendant has no disciplinary incidents while in custody, there is, of course, a significant difference between avoiding prison discipline and obeying the laws and rules out of custody.

*     *     *     *

Granting compassionate release would undermine the 18 U.S.C. § 3553(a) factors, resulting in an effective term of custody far below the defendant's current Guideline-range sentence.  The law, and the specific facts of defendant's case, do not support that result.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion.

Dated: February 20, 2026          Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States
Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


_____/s/_____
MATTHEW J. TAKO
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

19

The undersigned, counsel of record for Plaintiff United States of America, certifies that this brief contains 5,257 words, which complies with the word limit of L.R. 11-6.1.


Dated: February 20, 2026          Respectfully submitted,

                                  TODD BLANCHE
                                  Deputy Attorney General
                                  BILAL A. ESSAYLI
                                  First Assistant United States
                                  Attorney

                                  ALEXANDER B. SCHWAB
                                  Assistant United States Attorney
                                  Acting Chief, Criminal Division


                                        /s/
                                  _____
                                  MATTHEW J. TAKO
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

<u>**CERTIFICATE OF SERVICE**</u>

I, Enzo Gonzalez declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**OPPOSITION TO DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Dkt. 1855); and DECLARATION OF MATTHEW J. TAKO.**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

**CHERYL PEREZ-CASTANEDA**
**REG NO. 76389-112**
FCI Victorville Medium I
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 3725
ADELANTO, CA 92301

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ Via email, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **February 20, 2026**, at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

*Enzo Gonzalez*
_____